IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KIMBERLY RENEE POOLE, #262497, ) | |
| ) | C/A No. 0:03-3499-RBH-BM |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| WARDEN OF LEATH CORRECTIONAL ) | |
| INSTITUTION; and HENRY MCMASTER, ) | |
| Attorney General of the State of South Carolina, ) | |
| ) | |
| Respondents. ) | |
| _____) | |

This Petition for a writ of habeas corpus was filed on November 5, 2003, pursuant to 28 U.S.C. § 2254. Petitioner is represented by counsel. The Respondents filed a return and motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on February 11, 2004. However, rather than file a memorandum in opposition, Petitioner filed a motion to stay her Petition pending the re-trial of her co-conspirator. On May 11, 2004, Petitioner's motion to stay was granted.

On May 31, 2005, an order was entered lifting the stay of this case, and granting Petitioner thirty (30) days to file a response to the Respondents' motion for summary judgment. On July 11, 2005, Petitioner filed her written opposition to the motion for summary judgment. On July 19, 2006, Petitioner filed a letter citing a recent United States Supreme Court case discussing South Carolina's rule regarding evidence of third party guilt. No response to this filing was received, and



the Petition is therefore now before the Court for disposition.[1]

## Procedural History

The Petitioner is presently confined pursuant to commitment orders from the Horry County Clerk of Court. Petitioner was indicted in the August 1999 term by the Horry County Grand Jury for murder and criminal conspiracy in the death of her husband, Brent Poole. Petitioner and her husband had been on the beach at Myrtle Beach, South Carolina, when her husband was shot and killed by a third party. Petitioner was questioned on June 12, 1998 in the presence of her attorney, but her attorney was not present the following day, June 13, 1998, when Petitioner was again questioned. During this second interview, Petitioner gave a statement admitting that she and her boyfriend, John Frazier, had planned her husband's murder.

Petitioner was represented by William I. Diggs, Esquire, and Orrie E. West, Esquire, and following a trial was found guilty as charged on November 13, 1999. Petitioner was sentenced to life imprisonment for murder, and five (5) years, consecutive, for criminal conspiracy. See State v. Kimberly Poole, Unpub.Op.No. 2002-UP-29 (S.C.Ct.App. January 16, 2002).

Petitioner timely appealed, raising the following issues:

I. Admission of Appellant's statement was involuntary due to improper influences (unkept promises, assurances that Appellant would not lose her daughter, the use of threats, and the use of lies, all by interrogating detectives), and admitting the statement into evidence was in violation of the fifth and fourteenth amendments.

II. The Court should have permitted Appellant to pursue the issue of third party guilt when her witnesses were prepared to identify an individual who had been portrayed in three state's witnesses' composite drawings as the killer of Appellant's husband.

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 19.02(B)(2)(c), D.S.C. Respondents have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



III. The Assistant Solicitor switched a defense exhibit without defense counsel's knowledge and then exploited that act in the presence of the jury.

IV. The jury forelady and the assistant solicitor attended the same church and failed to disclose this relationship to Appellant's attorneys during the jury selection process or during the trial.

V. The jury misunderstood the law relating to "confessions".

See Final Brief of Appellant, p. 1.

On January 16, 2002, the South Carolina Court of Appeals entered an unpublished opinion affirming the judgment. State v. Kimberly Poole, Unpub.Op.No. 2002-UP-29 (S.C.Ct.App. January 16, 2002). Petitioner filed a timely petition for rehearing en banc on January 31, 2002, but the Court of Appeals entered an order denying the petition for rehearing en banc on March 21, 2002.

On May 22, 2002, Petitioner filed a Petition for Writ of Certiorari, presenting the following questions for state Supreme Court review:

**I.**

Did the Trial Court commit error and abuse its discretion when it refused to suppress Appellant's statement of June 13, 1998 when the statement was

(A) involuntary due to psychological pressures placed upon her resulting from police misconduct during the interview which included lying; promises of hope and reward; and implicit threats to take her daughter; and

(B) was taken in violation of the fifth amendment to the U.S.Constitution and the guaranteed rights to counsel and to remain silent?

**II.**

Did the trial court err and abuse its discretion when it refused to permit the Appellant to offer evidence of third party guilt (and even to make a proffer of proof on the subject) when Appellant could identify the individual depicted in two composite drawings produced by three state's witnesses? The ruling denied Appellant the right to counsel and the right to present a defense under the Sixth and Fourteenth Amendments to the U.S.Constitution respectively.

3



### III.

> Whether the Solicitor committed prosecutorial misconduct, and a juror committed juror misconduct when they both failed to disclose to the defense or the Court that they attended church together and thereafter when said juror was named the Jury Foreperson? The error denied the Appellant the right to a fair and impartial jury as guaranteed by the Fourteenth Amendment.

See Petition [Issues Presented for Review].

On November 6, 2002, the South Carolina Supreme Court entered its order denying the Petition in its entirety. See Order filed November 6, 2002. The Remittitur was sent down on November 14, 2002.

Petitioner then filed this habeas corpus petition in the United States District Court pursuant to 28 U.S.C. § 2254, raising the following issues:

> **GROUND ONE**: The Trial Court committed error when it refused to suppress Petitioner's statement of June 13, 1998, when the statement was (1) involuntary due to psychological pressures placed upon her resulting from police misconduct during the interview which included lying; promises of hope and reward; and implicit threats to take her daughter; and (2) was taken in violation of the Fifth Amendment to the U.S. Constitution, the guaranteed right, to counsel and the right to remain silent.

> **GROUND TWO**: The trial court erred when it refused to permit the Petitioner to offer evidence of third party guilt (and even to make a proffer of proof on the subject) when Petitioner could identify the individual depicted in two composite drawings produced by three state's witnesses. The ruling denied Petitioner the right to counsel and the right to present a defense under the Sixth and Fourteenth Amendments to the U.S. Constitution respectively.

> **GROUND THREE**: The court erred and denied the Petitioner due process of law when it refused her motion for a new trial, when the Assistant Solicitor committed prosecutorial misconduct, and a jury committed juror misconduct when they both failed to disclose to the defense or the Court that they attended church together and thereafter when said juror was named the Jury Foreperson? The error denied the Petitioner the right to a fair and impartial jury as guaranteed by the Sixth Amendment and due process of law as guaranteed by the Fourteenth Amendment.

> **GROUND FOUR:** The court erred and denied the Petitioner due process of law when it denied Petitioner's motion for a new trial when the jurors misunderstood the



>   law related to "confessions" and made use of the statement simply because the trial judge had previously determined that the statement could be admitted into evidence.

See Petition, pp. 5-14; see also Memorandum in Support of Petitioner's Motion for Clarification Order, p. 4.

### Discussion

Respondents have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., submitting that the entire petition is without merit. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P; see Habeas Corpus Rules 5-7.

**I**.

In Ground One of her Petition, Petitioner contends that the trial court erred when it refused to suppress her confession because the statement: 1) was involuntary due to improper conduct by the police; and 2) violated her Fifth Amendment rights because it was taken in the absence of counsel after she had invoked her right to counsel the previous day.

Petitioner raised these issues in her direct appeal, at which she had the burden of proving the allegations in her petition. The South Carolina Court of Appeals made the following findings with respect to these claims: 1) that on June 12, 1998, Petitioner met with the police for questioning; 2) that Petitioner's attorney was present; 3) that the police advised Petitioner of her Miranda rights, and she signed a waiver form indicating that she was willing to talk with the police; 4) this waiver form also indicated that she wanted an attorney present; 5) at the conclusion of the interview, Petitioner's attorney informed the police that he was leaving town the next day; 6) the following evening, June 13, Petitioner was arrested for obstruction of justice and interrogated by the



police; 7) at the commencement of this interrogation, the police reminded Petitioner that her attorney had advised her that if she were again questioned by police she could answer their questions; 8) the police also again informed Petitioner of her Miranda rights; 9) Petitioner signed an acknowledgment indicating that she understood those rights; 10) before signing a waiver of her rights, however, the following exchange took place: Petitioner: If I said that I didn't want to answer any [questions], could I get a court-appointed attorney? Officer: Like I said, that's up to you if you don't want to answer any questions; 11) that Petitioner then asked if she could speak with her parents; 12) in response, the officers stated they were unfamiliar with Winston-Salem[2] protocol and did not know if they would be able to allow her to talk with her parents; 13) Petitioner then signed a waiver of her rights indicating she was willing to make a statement, and that she did not want a lawyer present; 14) Petitioner also affirmatively waived her Miranda rights; 15) that during the interview, police informed Petitioner that Frazier had given a statement implicating her in her husband's murder, when he had not in fact done so; 16) that police also told Petitioner she was not going to lose her daughter if she was honest with them; 17) that Petitioner admitted she and Frazier planned her husband's murder; 18) that Petitioner contends her June 13 statement should be suppressed because Petitioner invoked her right to counsel during a noncustodial interrogation the previous day (the Court of Appeals pointed out that there was no dispute that the interrogation prior to June 13 was in a noncustodial setting); 19) that since Petitioner requested counsel on June 12, she contends that her request carried over to June 13th; 20) that Petitioner's right to counsel on June 12 did not carry over to her statements made after her arrest and subsequent valid waiver of rights on June 13; 21) that

---

[2]Petitioner, a resident of North Carolina, was questioned at the police station in Winston-Salem, North Carolina by Myrtle Beach police officers.



prior to June 13, Petitioner was never subjected to custodial interrogation so as to trigger Miranda rights; 22) that Petitioner's invocation of her right to counsel on June 12, 1998, was ineffectual to preserve this right for the subsequent custodial interrogation on June 13, 1998; 23) that the police were entitled to approach the Petitioner for questioning on June 13 and seek a valid waiver of her Fifth Amendment rights; 24) that Petitioner's June 13 statement is admissible in that it was given after she validly waived her Fifth Amendment rights; 25) that Petitioner's question about a court-appointed counsel did not rise to the level of a request for counsel; and 26) that Petitioner did not unambiguously request the assistance of counsel on June 13, 1998.  See State v. Kimberly Poole, Unpub.Op.No. 2002-UP-29 (S.C.Ct.App. January 16, 2002)

Substantial deference is to be given to the state court's findings of fact.  Evans v. Smith, 220 F.3d at 311-312 (4th Cir. 2000) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001). Although in a federal habeas proceeding the ultimate determination of the voluntariness of a confession presents a legal question meriting independent consideration, a state court's determination of the facts underlying the voluntariness of a confession are still entitled to a presumption of correctness. Miller v. Fenton, 474 U.S. 104, 105-110 (1985); Boggs v. Bair, 892 F.2d 1193, 1198-

7



1199 (4th Cir. 1989), cert. denied, 495 U.S. 940 (1990).

Additionally, since Petitioner's claim was adjudicated on the merits by the South Carolina state court, this Court's review is also limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000); Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of these deferential standards of review in considering Petitioner's claim.

In determining the voluntariness of confessions, the United States Supreme Court has held:

> The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. [citation omitted]. The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession.

Culombe v. Connecticut, 367 U.S. 568, 602 (1961); State v. Rochester, 391 S.E.2d 244, 246 (S.C. 1990). Hence, the test for determining whether a statement is involuntary under the Due Process Claus "is whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired,'" because of coercive police conduct. United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997); United States v. Jordan, No. 05-4512, 2006 WL 1307921 at * 1 (4th Cir. May 12,



2006). In determining whether a defendant's will has been overborne or his capacity for self determination critically impaired, courts must consider the "totality of the circumstances." United States v. Braxton, 112 F.3d at 781 (citation omitted).

The South Carolina Court of Appeals found that the trial court did not commit reversible error in refusing to suppress Petitioner's statement, holding that her confession was voluntary and that her Miranda rights had not been violated. Under the law, if a defendant was advised of their Miranda rights but nevertheless chose to make a statement, the State has the burden of proving by a preponderance of the evidence that the defendant voluntarily waived their rights. State v. Washington, 370 S.E.2d 611, 612 (S.C. 1988); State v. Neely, 244 S.E.2d 522 (S.C. 1978). Further, if an accused invokes his or her right to counsel during a custodial interrogation, police interrogation must cease unless the accused initiates further communication, exchanges or conversations with police. Edwards v. Arizona, 451 U.S. 477, 485, (1981). Here, however, the Officer who obtained Petitioner's statement (Altman) testified that on the day she gave her statement, Petitioner asked to speak to her parents, but never indicated she wanted her attorney present. (R.pp. 439-440). See State v. Register, 476 S.E.2d 153, 157 (S.C. 1996)[adult's request for someone other than an attorney does not invoke a Fifth Amendment right to speak with counsel].[3] Then, before the interview began, she was read her Miranda rights, and waived her Miranda rights and signed an advice of rights form (R.pp. 436- 439).

Subsequently, during the interview Officer Altman told the Petitioner:

..[Y]ou need to be totally honest with us now, because don't let him (Frazier) turn

---

[3]Altman also testified that Petitioner's attorney, who was leaving the country, told her the day before to answer any questions the police had in his absence. That, of course, was before Petitioner had been charged with any crime.

9



> around on you and you go down for the fall. If you planned it, it's a lot better to say now than getting the Solicitor ahold of this whole package, because let me tell you, they're pretty ruthless there...They don't care who's going up for the murder charge, okay? I want you to be totally honest on this. If you pre-conspired in any way or conspired to do this, I need you to tell me this, so when I go to the Solicitor and say, "Look Renee's done wrong. It took her a little bit to come clean with us, but she values her life. She's got a daughter--she's gotta raise. You know, I want to help her out as much as I can.

(R.pp. 546-548).

Later, during an unrelated portion of her confession interview, Petitioner mentioned her daughter.

This was discussed in the following colloquy during Officer Altman's re-cross examination:

> A.    She said, "I do not want to lose my daughter."...
>
> Q.    All right, and you say what?
>
> A.    I told her that "You're not going to lose your daughter."..."That's why you gotta tell us right now, because you gotta think of her."
>
> Q.    All right, "You gotta think of her," and Renee says, "I know that..."
>
> A.    And I said, "You're not going to lose your daughter."
>
> Q.    And she says?
>
> A.    That her daughter is her life now.
>
> Q.    Her daughter is her life, and then what do you say?
>
> A.    I told her, "You're not going to lose your daughter if you're honest."
>
> Q.    And she says what -- "If you're honest"?
>
> A.    "I know that."

(R.pp. 568-569).

The South Carolina Court of Appeals held in its decision that:

> It is doubtful the tactics used by Altman and other police officers in their interrogation would render Poole's confession involuntary. During the interrogation,

10



> Altman told Poole: "You're not gonna lose your daughter if you're honest." Officer Altman also told Poole he "wanted to help her out" and implied that he had a good relationship with the solicitor. Additionally, the police were untruthful to Poole when they told her Frazier had confessed and had implicated her in the murder.
>
> Poole was not threatened or coerced during the interrogation, was fully advised of her rights, and was coherent and relatively calm throughout the questioning. The police never made any type of promise to Poole or offered her any type of deal if she agreed to confess. The record simply does not indicate Poole's will was overborne so as to render her confession involuntary.

Opinion p. 3.

Based upon a review of the record and the applicable case law, the undersigned does not find that Petitioner has shown that the state court findings on these issues was unreasonable. With regard to the misrepresentations made by the interrogator concerning what Frazier had told police, the United States Supreme Court has held that misrepresentations of evidence by police, although a relevant factor, do not render an otherwise voluntary confession inadmissible. Frazier v. Cupp, 394 U.S. 731, 739 (1969)[confession voluntary despite police misrepresentation that associate had confessed]. Rather, the test of admissibility of a statement is its voluntariness. Further, The desire for counsel must be presented so that a reasonable officer in these circumstances would understand the statement to be a request for an attorney; no ambiguity or equivocation should exist; McNeil v. Wisconsin, 501 U.S. 171, 178 (1991); State v. Kennedy, 510 S.E.2d 714, 715-716 (S.C. 1998); and the trial judge's determination of the voluntariness of a statement will not be disturbed on appeal absent an abuse of discretion amounting to an error of the law. State v. McLeod, 401 S.E.2d 175, 177 (S.C. 1991), overruled on other grounds, State v. Evans, 415 S.E.2d 816 (S.C. 1992). Here, as evidenced by Petitioner being given her Miranda warnings and signing a waiver form, Petitioner voluntarily waived her right to counsel in this case. Petitioner has not shown that, although she was given her Miranda rights, she requested counsel at the time of her arrest and/or the



interrogation which led to her giving the contested statement. Also, although the police misrepresented what Frazier had told them, Petitioner has not shown that she is entitled to relief on that basis alone, as she has not shown that her will was overborne or her capacity for self-determination was critically impaired due to coercive police conduct.

In sum, Petitioner has failed to present evidence sufficient to show that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. Therefore, this claim is without merit and should be dismissed.

## II.

In Ground Two of her Petition, Petitioner contends that the trial court erred in failing to allow her to present evidence of third party guilt. Petitioner presented this issue to the South Carolina Court of Appeals and was denied relief.

Petitioner alleges that the police just assumed Frazier was the shooter because of his recent affair with the Petitioner. Petitioner asserts that the police "overlooked the possibility that there could be *another individual* who had had an affair with the Petitioner, and who would have had a desire or motive to kill her husband." See Petitioner's Memorandum in Opposition to Summary Judgment, pp. 22-23, n. 11 [emphasis in original]. At her trial, Petitioner attempted to offer evidence of third party guilt through her investigator, C.E. Martin. Petitioner's counsel moved to make a



proffer of Martin's credentials. The trial court granted this motion. (R.pp. 954, 957-958). However, the trial court ruled that Martin could not testify regarding issues of third party guilt. (R.pp. 942-961). The South Carolina Court of Appeals found that the trial court properly exercised its discretion in determining that the evidence was wholly insufficient to connect a third party to the crime, and the undersigned finds no reversible error in this finding.

Evidence offered by a defendant as to the commission of the crime by another person is limited to facts which are inconsistent with the defendant's guilt. State v. Beckham, 513 S.E.2d 606, 614 (S.C. 1999); State v. Parker, 366 S.E.2d 10 (S.C. 1988); Hoots v. Allsbrook, 785 F.2d 1214, 1222 (4th Cir. 1986)["Evidence of the commission of a crime by a third party is admissible only if it 'points unerringly' to the guilt of the third party and to the innocence of the accused."] A defendant may not present "conjectural inferences" that some other person might have committed the offense for which he is on trial, or say to the jury "by fanciful analogy" that someone other than he is more probably guilty. State v. Parker, 366 S.E.2d at 11.

Here, the evidence shows that, after the murder, witness Christopher Hensley went to the police station and attempted to assist with a composite drawing of the assailant. Hensley testified that he told the officers that he could not assist with the drawing of a composite, and that he could not identify the composite in court. (R.pp. 631-636). In Petitioner's brief, counsel states "we believe [that Hensley was not forthcoming] because of intimidation by the Myrtle Beach Police Department and the Solicitor's Office". See Petitioner's Memorandum in Opposition to Summary Judgment, p. 20. However, counsel has offered no evidentiary support for this statement. See Estrella v. Bryant, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment]; see also Gans



v. Gray, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; cf Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) [counsel's statements are not evidence]. Despite the fact that this composite was not identified by any witness as being an accurate description of the assailant, Petitioner attempted to offer her investigator to testify that the composite drawing looked like another individual, Bruce Wolford. (R.pp. 957-961); see Petitioner's Memorandum in Opposition to Summary Judgment, pp. 21-22. Wolford had apparently also had an affair with the Petitioner; and Petitioner wanted to show that Wolford looked like the composite drawing and also had a motive to kill the victim. See Petitioner's Memorandum in Opposition to Summary Judgment, p. 22.

>The Court of Appeals found,
>
> [t]he evidence proffered at trial, and the evidence pointed to in [Petitioner's] brief, but not proffered at trial, would not have been inconsistent with [Petitioner's] guilt. The proffered evidence merely indicates, without any specificity, other leads that might point to a third party. At best, testimony from the investigator would have established that an individual, other than Frazier, resembling the composite sketch had a motive to murder the victim. This testimony, based upon composite sketches repudiated by trial witnesses, would have done nothing more than cast bare suspicion upon another. A composite sketch not resembling the alleged co-conspirator standing alone is not sufficient to raise the issue of third-party guilt, particularly when the individuals providing the information denounce the accuracy of the sketch. Both Mr. and Mrs. Hobbs[4] identified Frazier from a photo-line up as the man they observed the evening of the shooting. Furthermore, there was additional evidence establishing that Poole conspired with Frazier to murder the victim. The trial court properly excluded the testimony of the investigator.

Based upon a review of the record and the relevant case law, the undersigned does not find that the Petitioner has shown that the trial court's exclusion of this testimony was unreasonable. Cf Andrews

---

[4]The Hobbs were another couple on the beach that night, and identified Frazier as the man on the beach.

14



v. Stegall, No. 00-1639, 11 Fed.Appx. 394 (6th Cir. Mar. 19, 2001)[third party culpability did not deprive petitioner of due process]; Evans, 220 F.3d at 312.

Furthermore, the undersigned can also find no federal violation in this record. Generally speaking, claims of violation of state law, including state evidentiary error, are not cognizable on a petition for federal habeas corpus relief. Stuart v. Wilson, 442 F.3d 506, 513 n. 3 (6th Cir. 2006)(citing Walker v. Engle, 703 F.2d 959, 962 (6th Cir. 1983)); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)["It is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."]; Scott v. Jones, 915 F.2d 1188, 1190 (8th Cir. 1990) [State law questions are not very often the basis of constitutional error under habeas review."].

> Federal courts must afford the states deference in its determinations regarding evidence and procedure. Crane v. Kentucky, 476 U.S. 683, 690 (1986)["we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted"]. It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

Hannah v. Hendricks, No. 04-2497, 2006 WL 83106, *15 (D.N.J. Jan. 11, 2006).

Only when a state "evidentiary ruling is so egregious that it results in a denial of fundamental fairness" may a violation merit federal due process habeas relief. Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003)(citations omitted). In other words, federal habeas relief can be granted only "if the alleged error was so conspicuously bad that it fatally infected the trial and rendered it fundamentally unfair." Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995); see Turner v. Armontrout, 845 F.2d 165, 169 (8th Cir.), cert. denied, 488 U.S. 928 (1988) [Admissibility rulings will support the grant of habeas relief only when the alleged error infringes upon a specific constitutional right

15



or is so prejudicial that it amounts to the denial of due process.]. Hence, the issue before this federal court is not whether the trial court erred in the presentation of this evidence, but whether the Court's ruling resulted in a trial so fundamentally unfair as to deny Petitioner due process of law. Rainer v. Dep't of Corrections, 914 F.2d 1067, 1072 (8th Cir. 1990), cert. denied, 489 U.S. 1099 (1991). No such evidence has been presented in this case. "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial -- i.e., that absent the alleged impropriety the verdict probably would have been different." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995). Petitioner has not shown that even if this evidence had been presented that there is a reasonable probability that the outcome of her trial would have been different. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra; Rainer, 914 F.2d at 1072; Bell, 236 F.3d at 157-158; State v. Beckham, supra; State v. Parker, supra; Hoots, 785 F.2d at 1222 ["Evidence of the commission of a crime by a third party is admissible only if it 'points unerringly' to the guilt of the third party and to the innocence of the accused."]. Therefore, this claim is without merit and should be dismissed.

### III.

In Ground Three of her Petition, Petitioner contends that the trial court erred by denying a motion for a mistrial. Specifically, Petitioner contends that she was denied the right to a fair and impartial jury because of misconduct between the assistant solicitor and a juror. Petitioner argues that it was prosecutorial misconduct when the assistant solicitor and juror Whitehead failed



to disclose the fact that they attended the same church.

In order to obtain habeas relief on this ground, Petitioner must show that her case presents an extraordinary circumstance mandating the finding of jury bias. "Those extreme situations...exist only 'where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances.'" Conner v. Polk, 407 F.3d 198, 206 (4th Cir. 2005)(quoting Person v. Miller, 854 F.2d 656, 664 (4th Cir. 1988)); see Smith v. Phillips, 455 U.S. 209, 222 (1982)(O'Connor, J., concurring)["While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias."][5]. To determine the question of bias, the Court must consider the juror's motives and the "'reasons that affect a juror's impartiality.'" Conner, 407 F.3d at 207 (quoting Jones v. Cooper, 311 F.3d 306, 313 (4th Cir. 2002)(quoting McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556 (1984))).

At the post-trial motion hearing, the assistant solicitor testified that,

> I moved here in - no, it wasn't April. It was late June, almost July...I visited a number of churches in the area, which was my wife - what my wife wanted to do, and we did that. We visited St. Paul's Episcopal Church probably within a month of - of moving here and within the - it's been a month and a half, I think, I joined the church.
>
> I will tell the Court that I have never, ever personally spoken to Ms. Whitehead with the exception of maybe saying hello, if I've done that, in church. I've never had any meaningful conversation with her whatsoever. I knew that she was a member of that church. I knew it was a conservative church. I knew that - or though, and I still don't know his position, that her husband, who also I've never had any conversation with,

---

[5] The Fourth Circuit panel in Conner noted that "[t]here may be some questions as to whether implied bias remains a viable doctrine following the Supreme Court's majority opinion in Smith v. Phillips, supra; . . . cf Fitzgerald v. Greene, 150 F.3d 357, 365 (4th Cir. 1998)[noting that the majority opinion in Smith appeared to undermine the legitimacy of the implied bias doctrine]." Conner, 407 F.3d at 206 n. 4. However, for purposes of summary judgment, the undersigned has assumed, as did the Court in Conner, the doctrine's continued viability.

17



> was either on the Board or I think they call it the Vestry or whatever at that church...
> I knew that they attended that church. I don't know her personally. She does not
> know me personally, nor does she know my wife personally.
>
> If I had felt that I had had any personal contact with that woman, and I haven't but if
> I had felt that I had had any contact with that woman that would have placed her in
> an unfair position, that is the juror, in deciding this case, I would have disclosed that,
> but there - I had - I've had no contact with that woman.

(R.pp. 985-986, 988-989).

There is no indication that the juror knew the assistant solicitor or that there was any known personal contact between the two. Furthermore, during voir dire, Whitehead assured the trial judge that her verdict would be based on the law and the evidence heard in the case. (R.p. 204).

Based on these facts, the trial judge did not err in denying Petitioner's motion for a new trial. Cf Thompson v. O'Rourke, 339 S.E.2d 505, 506-507 (S.C. 1986)[there is no absolute rule of disqualification based on a juror's relationship to an attorney in the case]; State v.Elmore, 308 S.E.2d 781, 784 (S.C. 1983)[mere fact that prospective juror is a friend or relative of solicitor does not automatically disqualify juror]; State v. Robinson, 409 S.E.2d 404, 408 (S.C. 1991) [No abuse of discretion where the Solicitor denied knowing the juror and the only contact between the juror and the Solicitor, if any, was fifteen years before appellant's trial]. Nor was the state court's finding that the trial judge did not abuse his discretion in denying the motion for a new trial based on the juror's association with the assistant solicitor unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the state court proceedings]; Williams v. Taylor, supra; Bell, 236 F.3d at 157-158. This claim is without merit and should be dismissed.



## IV.

In Ground Four of her Petition, Petitioner contends that the trial court erred and denied the Petitioner due process of law when it denied Petitioner's motion for a new trial when the jurors misunderstood the law relating to "confessions", and made use of her statement simply because the trial judge had previously determined that the statement could be admitted into evidence. This issue was raised in Petitioner's appeal, and the South Carolina Court of Appeals found,

> [t]he alleged jury misconduct in this case involves the foreperson's refusal to transmit a note from a fellow juror requesting that the trial judge re-instruct the jury as to the law regarding the admissibility of confessions. From the record it is apparent the trial judge instructed the jury as to the law regarding Poole's statement to police at the time the statement was introduced, and at the conclusion of the case. Furthermore, the jurors were individually polled after reaching their verdict to ensure unanimity as to Poole's guilt. We find Poole suffered no prejudice as a result of the alleged jury misconduct.

State v. Poole, No. 2002-UP-029 (S.C.Ct.App. Jan. 16, 2002).

"Juror misconduct is a constitutional violation [only] when 'the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.'" Marston v. White, 18 Fed.Appx. 545, 546 (9th Cir. 2001)(quoting Anderson v. Calderon, 232 F.3d 1053, 1098 (9th Cir. 1999)). Further, a Petitioner has the burden of showing that internal jury misconduct prejudiced him. Marston, 18 Fed.Appx. at 546; State v. Hunter, 463 S.E.2d 314 316 (S.C. 1995). Petitioner has failed to present evidence sufficient to show that the state court's rejection of this claim was unreasonable, and after reviewing the record and the relevant case law, the undersigned finds no error in the state court's finding that Petitioner was not prejudiced. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the state court proceedings]; Williams v. Taylor, supra; Bell, 236 F.3d at 157-158. This

19



claim is without merit and should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that Respondents' motion for summary judgment be **granted**, and that this Petition be **dismissed.**

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

September 1, 2006



20