IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| KIMBERLY RENEE POOLE, #262497, | ) | C/A No. 0:03-cv-03499-RBH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WARDEN OF LEATH CORRECTIONAL | ) | |
| INSTITUTION, and HENRY MCMASTER, | ) | |
| Attorney General of the State of South Carolina, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

This matter is before the court on a petition for a writ of habeas corpus filed by

Kimberly Renee Poole on November 3, 2003, pursuant to 28 U.S.C. § 2254.  Petitioner is

represented by counsel.  The Respondents filed a return and motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure on February 11, 2004.  On April

16, 2004, Petitioner filed a motion to stay her petition pending the re-trial of her co-

conspirator, John Boyd Frazier.  On May 11, 2004, Petitioner's motion to stay was granted.

On May 31, 2005, an order was entered lifting the stay of this case, and granting

Petitioner thirty (30) days to file a response to the Respondents' motion for summary

judgment.  On July 11, 2005, Petitioner filed her written opposition to the motion for summary

judgment.  On July 19, 2006, Petitioner filed a letter citing *Holmes v. South Carolina*, 126

S.Ct. 1727, 164 L.Ed.2d 503 (2006), which discussed South Carolina's rule regarding evidence

of third party guilt.  The Respondents did not file a response to Petitioner's letter.

### Factual Background and Procedural History

This matter arises from the criminal conviction and incarceration of the Petitioner,

Kimberly Renee Poole, for murder and criminal conspiracy in the death of her husband, Brent

Poole.  Petitioner and her husband had been on the beach at Myrtle Beach, South Carolina,

when her husband was shot and killed by a third party.  Petitioner was questioned on June 12,

1998 in the presence of her attorney, but her attorney was not present the following day, June

13, 1998, when Petitioner was questioned again.  During this second interview, Petitioner gave

a statement admitting that she and her boyfriend, John Frazier, had planned her husband's

murder.

Petitioner was indicted for murder and criminal conspiracy in the August 1999 term by

the Horry County Grand Jury.  Petitioner was represented by William I. Diggs, Esquire, and

Orrie E. West, Esquire, and following a jury trial was found guilty as charged on November

13, 1999.  Petitioner was sentenced to life imprisonment for murder, and five (5) years for

criminal conspiracy. *See State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29 (S.C. Ct. App.

January 16, 2002).

Petitioner appealed to the South Carolina Court of Appeals arguing the trial court erred

in: 1) admitting statements she made to police which were involuntary due to improper

influences, and in violation of the Fifth and Fourteenth amendments; 2) refusing to allow the

introduction of evidence concerning third party guilt; 3) refusing to grant a new trial based on

alleged prosecutorial misconduct regarding a defense exhibit; 4) refusing to grant a new trial

based on alleged prosecutorial and juror misconduct regarding the prosecutor's failure to

disclose that he and the jury foreperson attended the same church; and 5) refusing to grant a

new trial based on the jurors' misunderstanding of the law related to confessions.  On January

16, 2002, the South Carolina Court of Appeals entered an unpublished opinion affirming the

2

judgment. *State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29 (S.C. Ct. App. January 16, 2002). Petitioner filed a timely petition for rehearing *en banc* on January 31, 2002, which was denied by the Court of Appeals on March 21, 2002.

On May 22, 2002, Petitioner filed a petition for Writ of Certiorari, presenting the following questions for review by the South Carolina Supreme Court:

I.

Did the trial court commit error and abuse its discretion when it refused to suppress Appellant's statement of June 13, 1998 when the statement was

(A)     involuntary due to psychological pressures placed upon her resulting from police misconduct during the interview which included lying; promises of hope and reward; and implicit threats to take her daughter; and

(B)     was taken in violation of the Fifth Amendment to the U.S. Constitution and the guaranteed rights to counsel and to remain silent?

II.

Did the trial court err and abuse its discretion when it refused to permit the Appellant to offer evidence of third party guilt (and even to make a proffer of proof on the subject) when Appellant could identify the individual depicted in two composite drawings produced by three state's witnesses? The ruling denied Appellant the right to counsel and the right to present a defense under the Sixth and Fourteenth Amendments to the U.S. Constitution respectively.

III.

Whether the Solicitor committed prosecutorial misconduct, and a juror committed juror misconduct when they both failed to disclose to the defense or the Court that they attended church together and thereafter when said juror was named the Jury Foreperson? The error denied the Appellant the right to a fair and impartial jury as guaranteed by the Fourteenth Amendment.

3

*See* Petition [Issues Presented for Review].  On November 6, 2002, the South Carolina

Supreme Court entered an Order denying Certiorari.  *See* Order filed November 6, 2002.  The

Remittitur was sent down on November 14, 2002.

Petitioner then filed this habeas corpus petition in the United States District Court

pursuant to 28 U.S.C. § 2254, raising the following issues:

> **Ground One:**  The Trial Court committed error when it refused to
> suppress Petitioner's statement of June 13, 1998, when the statement was
> (1) involuntary due to psychological pressures placed upon her resulting
> from police misconduct during the interview which included lying;
> promises of hope and reward; and implicit threats to take her daughter;
> and (2) was taken in violation of the Fifth Amendment to the U.S.
> Constitution, the guaranteed right, to counsel and the right to remain
> silent.

> **Ground Two:**  The trial court erred when it refused to permit the
> Petitioner to offer evidence of third party guilt (and even to make a
> proffer of proof on the subject) when Petitioner could identify the
> individual depicted in two composite drawings produced by three state's
> witnesses.  The ruling denied Petitioner the right to present a defense
> under the Sixth and Fourteenth Amendments to the U.S. Constitution
> respectively.

> **Ground Three:**  The court erred and denied the Petitioner due process of
> law when it refused her motion for a new trial, when the Assistant
> Solicitor committed prosecutorial misconduct, and a jury committed juror
> misconduct when they both failed to disclose to the defense or the Court
> that they attended church together and thereafter when said juror was
> named the Jury Foreperson? The error denied the Petitioner the right to a
> fair and impartial jury as guaranteed by the Sixth Amendment and due
> process of law as guaranteed by the Fourteenth Amendment.

> **Ground Four:** The court erred and denied the Petitioner due process of
> law when it denied Petitioner's motion for a new trial when the jurors
> misunderstood the law related to "confessions" and made use of the
> statement simply because the trial judge had previously determined that
> the statement could be admitted into evidence.

*See* Petition for Writ of Habeas Corpus, pp. 5-15.

4

On September 1, 2006, the Magistrate Judge issued a Report and Recommendation recommending the Respondents' Motion for Summary Judgment be granted and the Petitioner's petition be dismissed.  On September 11, 2006, the Petitioner filed objections to the Report and Recommendations, objecting to: 1) the Magistrate Judge's report and legal conclusion that the statement given by her on June 13, 1998, was voluntarily given; 2) the Magistrate Judge's report and legal conclusion that the South Carolina Court of Appeals committed no error in refusing to allow Petitioner to introduce evidence of third party guilt; 3) the Magistrate Judge's report that the State courts properly handled Petitioner's request for a mistrial upon learning that the jury foreperson attended the same church as the prosecuting attorney; and 4) the Magistrate Judge's conclusion that Petitioner was not entitled to a new trial when the jurors misunderstood the law relating to confessions.

**Scope of Review**

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 this matter comes before the court with the Report and Recommendation ("R&R") of United States Magistrate Judge Bristow Marchant filed September 1, 2006.  The Magistrate Judge makes only a recommendation to the court, to which any party may file written objections. The Court is not bound by the recommendation of the Magistrate Judge but, instead, retains responsibility for the final determination. *Mathews v. Weber*, 423 U.S. 261 (1976).  The Court is required to make a *de novo* determination of those portions of the Report or specified findings or recommendation as to which an objection is made.  However, the court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the Report and Recommendation to which no

objections are addressed. While the level of scrutiny entailed by the court's review of the Report thus depends on whether or not objections have been filed, in either case the court is free, after review, to accept, reject, or modify any of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1).

## Discussion

Respondents have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The Petitioner's habeas corpus petition assigns four errors to the state trial court proceedings. Each of the errors alleged in the Petitioner's petition was raised in her direct appeal to the South Carolina Court of Appeals. *See State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29 (S.C. Ct. App. January 16, 2002). In ruling on a claim of error that has already been rejected by at least one state court, the Federal court must examine the state court

6

decision and accept the state court's decisions on questions of state law, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Thomas v. Davis*, 192 F.3d 445, 449 n.1 (4th Cir. 1999); *Roach v. Angelone*, 176 F.3d 210, 217 (4th Cir. 1999); *Ramdass v. Angelone*, 187 F.3d 396, 407 (4th Cir. 1999); *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998); *Huffington v. Nuth*, 140 F.3d 572, 584 (4th Cir. 1998), defer to the state court's factual determinations unless rebutted by clear and convincing evidence, *Young v. Catoe*, 205 F.3d 750, 756 n.3 (4th Cir. 2000); *Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000); *Wilson v. Moore*, 178 F.3d 266, 280 (4th Cir. 1999); *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (stating the presumption of correctness of state court factual determinations imposed by 28 U.S.C. § 2254(e)(1) applies to findings by state appellate courts as well as state trial courts), and respect the state court's determinations of Federal law unless the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

## I.

In Ground One of her petition, Petitioner contends that the trial court erred when it refused to suppress her confession because the statement: 1) was involuntary due to psychological pressures placed on the Petitioner by improper conduct of the police; and 2) violated her Fifth Amendment rights because it was taken in the absence of counsel after she had invoked her right to counsel the previous day.  The South Carolina Court of Appeals found that the trial court did not commit reversible error in refusing to suppress Petitioner's statement, holding that her confession was voluntary and that her *Miranda* rights had not been violated. *State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29, at p. 5-9 (S.C. Ct. App. January

16, 2002).   The South Carolina Court of Appeals made extensive factual findings with regard to the Petitioner's confession, which are restated in the Magistrate Judge's Report and Recommendation, and do not need to be restated here.

The Court of Appeals' finding concerning whether the Petitioner's confession was voluntary and/or violated her Fifth Amendment rights was a state court determination of Federal law and shall be respected unless the decision was contrary to, or an unreasonable application of, clearly established Federal law. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 412; *Evans*, 220 F.3d at 312.   In his Report and Recommendation, the Magistrate Judge found that the Petitioner failed to show that the state court findings on these issues was unreasonable and concluded that Ground One of the Petitioner's petition was without merit and should be dismissed.   In the Petitioner's Memorandum in Support of Petitioner's Objections to Magistrate Judge's Report and Recommendation, the Petitioner argued that while the Magistrate Judge set forth the proper legal standard for determining the admissibility of the Petitioner's statement, the Magistrate Judge failed to consider the totality of the circumstances when rendering his conclusion that the Petitioner's statement was voluntary.   Petitioner did not object, however, to the Magistrate Judge's finding that the Petitioner failed to present sufficient evidence to show that the Court of Appeals' rejection of her claim that her statement was taken in violation of *Miranda* was unreasonable.[1]

Petitioner's Memorandum in Support of Petitioner's Objections notes that Detective

---

[1] The Magistrate Judge found that the Petitioner voluntarily waived her right to counsel because before the Petitioner was interrogated she was given her *Miranda* warnings and signed a form waiving her right to counsel. *See* Report and Recommendation, p. 11-12 [Doc. #19].

Altman made the following misrepresentations to the Petitioner during the interrogation: 1) that John Frazier had confessed and implicated her in the murder plot and that he was placing all of the blame on her; 2) that Detective Altman did not want to see the Petitioner go to jail for the rest of her life; 3) that Frazier was facing the death penalty when, in fact, he was not; 4) that Detective Altman wanted to help the Petitioner, but she had to help herself first; 5) that Detective Altman bragged about his relationship with the Solicitor's office implying that he could use that relationship to help the Petitioner; and 6) that Detective Altman told the Petitioner that if she was honest she would not lose her daughter.  Petitioner argues that these misrepresentations were improper and when considered cumulatively, rendered her statement involuntary as being the product of psychological coercion.

"A statement is involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997).  For a statement to be involuntary under the Due Process Clause, the statement must be extracted by threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of improper influence. *Braxton*, 112 F.3d at 780.  "The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary." *Id*.  Rather, the question is whether the defendant's will was "overborne" or her "capacity for self-determination" was critically impaired by the coercive police conduct. *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987).  In determining whether a defendant's will was overborne or their capacity for self-determination critically impaired, courts must consider the "'totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and

9

the details of the interrogation." *Pelton*, 835 F.2d at 1071.

The court concurs with the Magistrate Judge's finding that the Court of Appeals' decision regarding the voluntariness of Petitioner's statement was not unreasonable. The Court of Appeals found that:

> Poole was not threatened or coerced during the interrogation, was fully advised of her rights, and was coherent and relatively calm throughout the questioning. The police never made any type of promise to Poole or offered her any type of deal if she agreed to confess. The record simply does not indicate Poole's will was overborne so as to render her confession involuntary.

*State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29, at p. 5 (S.C. Ct. App. January 16, 2002).

Although in a federal habeas proceeding the ultimate determination of the voluntariness of a confession presents a question meriting independent consideration, a state court's determination of the facts underlying the voluntariness of a confession are still entitled to a presumption of correctness. *Miller v. Fenton*, 474 U.S. 104, 112 (1985); *Boggs v. Bair*, 892 F.2d 1193, 1199 (4th Cir. 1989). Based on a review of the record, the Court of Appeals' decision was not based on an unreasonable determination of the facts. The totality of the circumstances of the interrogation do not show that the Petitioner's will was overborne or that her capacity for self determination was critically impaired.

With regard to the misrepresentations of fact made by Detective Altman during the interrogation concerning Frazier, the United States Supreme Court has held that misrepresentations of evidence by police, although a relevant factor, do not render an otherwise voluntary confession inadmissible. *Frazier v. Cupp*, 394 U.S. 731, 739 (1969).

Regarding Detective Altman's statements that: 1) he did not want to see the Petitioner

10

go to jail for the rest of her life; 2) he wanted to help the Petitioner, but she had to help herself first; 3) his relationship with the Solicitor's office may be used to help the Petitioner if she confesses; and 4) if Petitioner was honest she would not lose her daughter, "it is generally recognized that the police may use some psychological tactics in eliciting a statement from a suspect." *Miller v. Fenton*, 796 F.2d 598, 605 (3d Cir. 1986) (citing *Haynes v. Washington*, 373 U.S. 503, 514-15 (1963)).  As long as the defendant's decision to confess is a "product of the suspect's own balancing of competing considerations, the confession is voluntary." *Miller*, 796 F.2d at 605.  In this case, the record indicates that Petitioner's confession was the result of her own balancing of competing considerations.  Again, the Petitioner has failed to submit sufficient evidence showing that her will was overborne or her capacity for self-determination was critically impaired.

The Court of Appeals' decision regarding the voluntariness of Petitioner's confession was reasonable considering the totality of the circumstances and the facts contained in the record.  Further, the Court of Appeals' decision was not contrary to, or an unreasonable application of, Federal law.  Because the Petitioner has failed to submit sufficient evidence to show that the Court of Appeals' decision was unreasonable, this claim must be dismissed.

## II.

Ground Two of Petitioner's petition concerns the trial court's refusal to allow the Petitioner to present evidence of third party guilt at the trial.  Petitioner argues that the trial court's refusal denied Petitioner the right to counsel and the right to present a defense under the Sixth and Fourteenth Amendments.  This issue was presented to the South Carolina Court of Appeals, which found that the trial court properly excluded Petitioner's evidence of third

11

party guilt. *State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29, at p. 11 (S.C. Ct. App. January 16, 2002). The Magistrate Judge in his Report and Recommendation concluded that the Petitioner did not show that the trial court's exclusion of Petitioner's evidence of third party guilt was unreasonable. Additionally, the Magistrate Judge found no federal violation in the record.

Petitioner objected to the Magistrate Judge's finding on this issue arguing specifically that the Magistrate Judge did not consider evidence that: 1) placed John Frazier in Winston Salem within five hours of the murder at Myrtle Beach, South Carolina; and 2) Detective Altman confirmed that the composite sketch, which allegedly resembled Bruce Wolford and not John Frazier, was generated during the police interview with witness Christopher Hensley and that the composite was not the only evidence proffered by the Petitioner to raise the issue of third party guilt. Petitioner also argues that this case is analogous to the recent United States Supreme Court case, *Holmes v. South Carolina*, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006), which dealt with South Carolina's evidentiary rule concerning the admissibility of evidence of third party guilt.

In *Holmes v. South Carolina*, the Supreme Court addressed the question "whether a criminal defendant's federal constitutional rights are violated by an evidence rule under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict." 126 S.Ct. at 1729. At his murder trial, Petitioner Holmes attempted to introduce evidence that another person, White, committed the murder. *Id.* at 1730-31. Specifically, Holmes proffered several witnesses who placed White in the victim's neighborhood on the morning of the assault, in addition to other

12

witness who were prepared to testify that White had admitted to them that he had murdered

the victim and that the police and prosecutor's office had fabricated evidence against Holmes.

*Id*.  Holmes proffered another witness to refute White's alibi for the time of the crime. *Id*.

The trial court excluded Holmes' evidence citing *State v. Gregory*, 16 S.E.2d 532 (1941), and

*State v. Gay*, 541 S.E.2d 541 (2001), stating that evidence of third party guilt was "admissible

if it 'raise[s] a reasonable inference or presumption as to [the defendant's] own innocence' but

is not admissible if it merely 'cast[s] a bare suspicion upon another' or 'raise[s] a conjectural

inference as to the commission of the crime by another.'" *Holmes*, 126 S.Ct. at 1731.  Holmes

appealed the trial court's decision to the South Carolina Supreme Court, which affirmed the

trial court's decision holding "where there is strong evidence of an appellant's guilt, especially

where there is strong forensic evidence, the proffered evidence about a third party's alleged

guilt does not raise a reasonable inference as to the appellant's own innocence." *Holmes*, 126

S.Ct. at 1731 (quoting *State v. Holmes*, 605 S.E.2d 19, 24 (S.C. 2004)).  The South Carolina

Supreme Court further held that Holmes could not "overcome the forensic evidence against

him to raise a reasonable inference of his own innocence." *Holmes*, 605 S.E.2d at 24.

The United States Supreme Court discussed *State v. Gregory*, in which South Carolina

adopted its rule regarding the admissibility of third party evidence. *Holmes*, 126 S.Ct. at 1733.

The rule adopted by *Gregory* stated that:

> Evidence offered by accused as to the commission of the crime by another
> person must be limited to such facts as are inconsistent with his own
> guilt, and to such facts as raise a reasonable inference or presumption as
> to his own innocence; evidence which can have (no) other effect than to
> cast a bare suspicion upon another, or to raise a conjectural inference as
> to the commission of the crime by another, is not admissible . . .[B]efore
> such testimony can be received, there must be such proof of connection

13

> with it, such a train of facts or circumstances, as tends clearly to point out
> such other person as the guilty party.

*Gregory*, 16 S.E.2d at 534-35.  The Supreme Court acknowledged that the rule set forth in

*Gregory* was widely accepted and not challenged by Holmes. 126 S.Ct. at 1733.

The Supreme Court then discussed how the rules set forth in *State v. Gay*, 541 S.E.2d

541, and *State v. Holmes*, 605 S.E.2d 19, radically changed the rule set forth in *Gregory*.

*Holmes*, 126 S.Ct. at 1733-34.  The Supreme Court stated that:

> Under [*Gay* and *Holmes*], the trial judge does not focus on the probative
> value or the potential adverse effects of admitting the defense evidence of
> third-party guilt.  Instead, the critical inquiry concerns the strength of the
> prosecution's case: If the prosecution's case is strong enough, the evidence
> of third-party guilt is excluded even if that evidence, if viewed
> independently, would have great probative value and even if it would not
> pose an undue risk of harassment, prejudice, or confusion of the issues.

*Holmes*, 126 S.Ct. at 1734.  The Supreme Court concluded its decision by abrogating *State v.*

*Gay*, 541 S.E.2d 541, and *State v. Holmes*, 605 S.E.2d 19, reasoning that the rules set forth in

those cases were arbitrary and did not rationally serve the end that the *Gregory* rule and its

analogues in other jurisdictions were designed to promote. *Holmes*, 126 S.Ct. at 1734-35.

Nevertheless, even though this case was decided by the South Carolina Court of

Appeals before the United States Supreme Court overruled *State v. Gay* and *State v. Holmes*,

the Court of Appeals did not rely on the rules set forth in those cases and considered the

evidence proffered by the Petitioner in her appeal.[2] *State v. Kimberly Poole*, Unpub.Op.No.

---

[2] The Court of Appeals did, however, cite *State v. Gay*, 514 S.E.2d 541, 544 (S.C. 2001),
but not for the proposition addressed in *Holmes v. South Carolina*, 126 S.Ct. 1727 (2006).
*See State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29, at p. 11 (S.C. Ct. App. January 16,
2002) (citing *State v. Gay* for the proposition that: 1) "[e]vidence of a third party's motive
and opportunity to kill the victim is properly excluded where the appellant nonetheless fails
to show that the proffered evidence is inconsistent with his guilt"; and 2) "admission and

14

2002-UP-29, at p. 11 (S.C. Ct. App. January 16, 2002).  In affirming the trial court's

exclusion of the Petitioner's evidence of third party guilt, the Court of Appeals stated:

> The evidence proffered at trial, and the evidence pointed to in Poole's brief, but not proffered at trial, would not have been inconsistent with her own guilt.  The proffered evidence merely indicates, without any specificity, other leads that might point to a third party.  At best, testimony from the investigator would have established that an individual, other than Frazier, resembling the composite sketch had a motive to murder the victim.  This testimony, based upon composite sketches repudiated by trial witnesses, would have done nothing more than cast bare suspicion upon another.

*Id*.

     In arguing that *Holmes v. South Carolina*, 126 S.Ct. 1727, is analogous to the instant

case, Petitioner points out that the State courts and the Magistrate Judge have only considered

part of the proffer.  Petitioner argues that the Magistrate Judge overlooked evidence that placed

John Frazier in Winston Salem, North Carolina within five hours of the murder at Myrtle

Beach, South Carolina.  This fact appears to have been considered by the Court of Appeals as

it was included in the statement of facts set forth in the Court of Appeals' opinion.

     The Court of Appeals found as a fact that Officer Scott Brown noticed Petitioner on

the beach waving her arms at approximately 11:45 p.m. on the evening of June 9, 1998 and

that an officer for the Winston Salem, North Carolina Police Department found Frazier at

home in Winston Salem at approximately 5:25 a.m. on the morning of June 10, 1998. *State v.*

*Kimberly Poole*, Unpub.Op.No. 2002-UP-29, at p. 2 (S.C. Ct. App. January 16, 2002).  This

fact is not inconsistent with the Petitioner's own guilt and does not raise a reasonable

_____

rejection of proffered testimony is within the sound discretion of the trial court and its
exercise of such discretion will not be disturbed on appeal absent an abuse of discretion or
commission of legal error resulting in prejudice to the rights of the appellant").

15

inference or presumption as to her innocence. *See Gregory*, 16 S.E.2d at 534.

Petitioner also argues that the Magistrate Judge overlooked the fact that Detective Altman confirmed that the composite was generated during the police interview with Hensley and that the Petitioner proffered evidence in addition to the composite drawing to raise the issue of third party guilt. Specifically, Petitioner points out that prior to her affair with John Frazier she had an affair with Bruce Wolford and that Bruce Wolford had a motive to kill her husband. Petitioner also notes that Bruce Wolford had long hair and a mustache and resembled the composite drawings generated from the police interviews with Mark and Donna Hobbs and Christopher Hensley. Immediately after the murder, according to the Petitioner, Wolford cut his hair and shaved his mustache. Also according to the Petitioner, Petitioner's husband sought to have an affair with Wolford's wife. Finally, Petitioner submits that Wolford provided the Myrtle Beach police detectives with Internet chat dialogue he had with John Frazier in an alleged attempt to deflect the focus of the investigation from himself and onto Frazier.

Petitioner relies heavily on the argument that the composite drawings provided by Hensley and Mark and Donna Hobbs do not resemble Frazier, but resemble Bruce Wolford. However, at trial, Hensley testified that he had difficulty in describing the man he saw for purposes of the composite. The Hobbses testified at trial that they too had difficulty with the process of creating a composite and they did not believe the composite was an accurate reflection of the man they observed on the beach that evening. The Hobbses both identified Frazier in a photo-line up as the man they observed on the beach the evening of the shooting.

If anything, the evidence proffered by the Petitioner casts bare suspicion on another and

16

does nothing more than raise a conjectural inference as to the commission of the crime by someone other than Frazier. *See Gregory*, 16 S.E.2d at 534. The Court of Appeals' decision regarding the exclusion of Petitioner's evidence was not violative of the U.S. Supreme Court's *Holmes* decision. As such, this court concurs with the Magistrate Judge's conclusion that the Court of Appeals' decision was reasonable and that no federal violation occurred when the trial court excluded Petitioner's evidence of third party guilt. Therefore, this claim is dismissed.

### III.

In Ground Three of the Petitioner's petition, she contends that the trial court erred and denied her due process of law when it refused her motion for a new trial on the basis of prosecutorial and juror misconduct. In particular, Petitioner contends that both the prosecutor and the jury foreperson failed to disclose the fact that they attended the same church and as a result the Petitioner was denied her right to a fair and impartial jury. This argument was presented to the Court of Appeals, which found that the trial court did not abuse its discretion in denying the motion for a new trial on this basis. *State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29, at p. 14 (S.C. Ct. App. January 16, 2002). The Magistrate Judge concluded in his Report and Recommendation that the trial judge did not err in denying Petitioner's motion for a new trial. The Magistrate Judge also concluded that the Court of Appeals' decision on this issue was not unreasonable. Petitioner objected to the Magistrate Judge's finding respectfully stating that the Magistrate Judge was wrong and that the state court's treatment of this issue was unreasonable. This court agrees with the Magistrate Judge's finding that the Court of Appeals' decision was not unreasonable. *See Evans*, 220 F.3d at 312.

In this case, there is no indication that the juror knew the assistant solicitor or that

17

there was any known personal contact between the two.  The Court of Appeals found that there was no indication in the record that the juror was even aware that the assistant solicitor attended her church or that she purposefully or intentionally concealed information. *State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29, at p. 14 (S.C. Ct. App. January 16, 2002). Furthermore, during the hearing on Petitioner's motion for a new trial, the assistant solicitor stated that he had never personally spoken to the juror with the exception of maybe saying hello in church and that he may not have even done that.  The assistant solicitor further stated that he had never had any personal contact with the juror's husband.  Finding no indication of bias, the Court of Appeals found there was no basis to disqualify the jury foreperson. *Id*.

A state court's determination of whether a juror is biased is a factual determination that is entitled to a presumption of correctness on review of a federal habeas corpus petition. *Greene v. Georgia*, 519 U.S. 145, 146 (1996).  Petitioner has not submitted clear and convincing evidence to rebut the state court's findings regarding Petitioner's allegation of the jury foreperson's bias in favor of the assistant solicitor. *See Evans*, 220 F.3d at 312.

Additionally, in order to prevail on her habeas corpus petition on this ground, the Petitioner must show that her case presents an extraordinary circumstance mandating a finding of jury bias. *Conner v. Polk*, 407 F.3d 198, 206 (4th Cir. 2005).  "Those extreme situations . . . exist only 'where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances.'" *Conner*, 407 F.3d at 206 (citing *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988)).  Some examples of circumstances where it is highly unlikely that the average person could remain impartial are: 1) when the juror is an actual employee of

18

the prosecuting agency; 2) when the juror is a close relative of one of the participants in the trial or criminal transaction; or 3) when the juror was a witness to the crime or somehow involved in the criminal transaction. *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring).  The mere fact that the assistant solicitor and jury foreperson attended the same church is not a fact that indicates a high likelihood of impartiality.  *See Person*, 854 F.2d at 664.  Again, there is no indication that the juror knew the assistant solicitor or that they had any personal contact.

This court finds that it was not unreasonable for the Court of Appeals to conclude that the Petitioner was not entitled to a new trial under these facts.  As a result, this claim is dismissed.

## IV.

The final ground in the Petitioner's habeas petition contends that the trial court erred and denied the Petitioner due process of law by denying her motion for a new trial on the basis of the jurors' misunderstanding the law related to confessions.  Specifically, one juror apparently felt that Petitioner's confession was illegally obtained and was confused as to whether the jurors could decide the question of the legality of the confession, or whether they had to accept the confession as fact because the Judge had allowed the confession into evidence.  This juror wrote the jury foreperson a note requesting to have the charge as to the admissibility of the confession read again to the jury, but the foreperson never transmitted the note to the judge.  Thus, the Petitioner argues, at least one of the jurors deliberated under a fundamental misunderstanding of the law applicable to confessions.

This issue was also presented to the Court of Appeals, which held that the Petitioner

suffered no prejudice as a result of any alleged juror misconduct. *State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29, at p. 15 (S.C. Ct. App. January 16, 2002).  The Magistrate Judge recommended that this claim be dismissed concluding that the Petitioner failed to present evidence sufficient to show that the state court's rejection of this claim was unreasonable or that the Petitioner had been prejudiced.  The Petitioner objected to the Magistrate Judge's finding on this issue arguing that the Court of Appeals' decision was unreasonable.  Petitioner argues that whether the jurors were polled or not and whether the trial court's jury instruction on the use of confessions was proper does not eliminate the error complained of in Ground Four of the Petitioner's petition.

This court is not convinced by the Petitioner's arguments raised in her objections.  This court believes that the polling of the jury indicates that the jury's verdict was unanimous and based on the evidence admitted at trial.  Because the Petitioner did not make the trial court's jury instructions a part of the record, the Court of Appeals found as a fact that the trial court properly instructed the jury concerning the law of confessions.[3] *See State v. Kimberly Poole*, Unpub.Op.No. 2002-UP-29, at p. 15 (S.C. Ct. App. January 16, 2002).  The Court of Appeals found that "[f]rom the record it is apparent the trial judge instructed the jury as to the law regarding Poole's statement to police at the time the statement was introduced, and at the conclusion of the case." *Id*.  The Petitioner has not carried her burden of showing that internal jury misconduct prejudiced her. *State v. Hunter*, 463 S.E.2d 314, 316 (S.C. 1995).

The Petitioner also states that the jury foreperson's failure to transmit another juror's

---

[3] The Petitioner does not allege in her petition that the trial court instructed the jury incorrectly.

request to the judge concerning the instruction on confessions shows prejudice as a result of the alleged juror and prosecutorial misconduct discussed in part III of this order. However, this argument goes towards Petitioner's allegation of jury bias by the jury foreperson. As stated above, the Court of Appeals found that the jury foreperson was not biased by the mere fact that she attended the same church as the assistant solicitor. This finding is entitled to a presumption of correctness and the Petitioner has not presented clear and convincing evidence to rebut the Court of Appeals' finding. *See Greene*, 519 U.S. at 146; *Evans*, 220 F.3d at 312.

In sum, the Petitioner has failed to present sufficient evidence to show that the state court's rejection of this claim was unreasonable. *Evans*, 220 F.3d at 312. Accordingly, this court agrees with the Report and Recommendation of the Magistrate Judge and must dismiss this claim.

<u>**Conclusion**</u>

The court has reviewed the Report, objections, pleadings, memoranda, and applicable law. The court overrules all objections and adopts the Report and Recommendation and incorporates it herein by reference. Accordingly, Respondents' motion for summary judgment is **GRANTED** and the petition for a writ of habeas corpus is **DISMISSED**.

Florence, South Carolina                                      s/ R. Bryan Harwell
January 31, 2007                                               R. Bryan Harwell
                                                              United States District Judge

21